UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| BRENDA H. ALDRIDGE, ET AL. | * | CIVIL ACTION NO.  12-2031 |
| VERSUS | * | JUDGE ELIZABETH E. FOOTE |
| PETCO ANIMAL SUPPLIES STORES, INC., D/B/A PETCO | * | MAG. JUDGE KAREN L. HAYES |

MEMORANDUM ORDER

Before the Court is a motion to limit Rule 30(b)(6) notice of deposition and

accompanying request for production of documents [doc. # 32] filed by Defendant, PETCO

Animal Supplies Stores, Inc. ("PETCO").  The motion is opposed.  For reasons explained below,

the motion is GRANTED IN PART.[1]

Background

On, or about June 20, 2012, Plaintiffs Brenda Aldridge, and her husband, John Aldridge,

filed the instant suit for damages against PETCO in the 1st Judicial District Court for the Parish

of Caddo, State of Louisiana.  (Petition, [doc. #1, Exh. A]).  Plaintiffs allege that on the morning

of June 21, 2011, Brenda Aldridge slipped and fell "in a damp/wet place on the floor" near the

entrance to the pet store's grooming facility.  *Id*.  ¶¶ 3-5.  According to the petition, it had been

raining that morning, with a number of patrons and their pets' having entered and exited the

facility prior to the incident at issue.  *Id*., ¶¶ 7-9.  Plaintiffs contend that the accident was caused

---

[1]  As this motion is not excepted within 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this order is issued under the authority thereof, and in accordance with the standing order of this court.  Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

by PETCO's negligence; and thus, PETCO is responsible for Plaintiffs' resulting damages.  *See*

Petition.[2]  On July 27, 2012, PETCO removed the matter to federal court on the basis of diversity

jurisdiction.  (Notice of Removal [doc. # 1]).

Following discovery, PETCO filed a motion for summary judgment on April 17, 2013.

The motion seeks dismissal of the complaint on the grounds that Plaintiffs are unable to establish

one or more elements of their cause of action:

> (1) that water on the floor caused Mrs. Aldridge to fall, (2) that if any water was
> on the floor it created an unreasonable risk of harm, and (3) that PETCO knew or
> should have known that there was water on the floor sufficient to create an
> unreasonably dangerous condition that cause[d] Mrs. Aldridge to fall.

(Def. MSJ, Memo., pg. 9 [doc. # 22]).

On May 17, 2013, Plaintiffs sought and obtained an extension of time to respond to the motion

for summary judgment so they could take PETCO's 30(b)(6) deposition. (Pl. M/Ext. of Time

[doc. # 28]).

On June 14, 2013, Plaintiffs served PETCO with a notice of Rule 30(b)(6) deposition

scheduled for June 28, 2013.  (M/Protective Order, Exh. 2 [doc. # 32-4]).[3]  Attached to the notice

were two exhibits containing document production requests labeled as "Exhibit A," and potential

topics to be examined during the depositions labeled as "Exhibit B."  *Id*.

On June 26, 2013, PETCO objected to the requests for production on the grounds that

they were "vague, overbroad, unduly burdensome, cumulative, duplicative, and not reasonably

---

[2]  As a result of the accident, Brenda Aldridge suffered serious and disabling injuries,
including a fractured right hip that required replacement.  *Id*., ¶ 13.

[3]  Plaintiffs resorted to a 30(b)(6) deposition because PETCO was unwilling to stipulate
to the authenticity and description of various photographs taken by Plaintiffs of the Shreveport
PETCO store, which depicted, *inter alia*, different textured floor surfaces in the aquarium and
bathroom areas.  *Id*.

calculated to lead to the discovery of admissible evidence." *Id.*, [doc. # 32-5].  PETCO also filed

the instant motion to limit the Rule 30(b)(6) notice of deposition and associated document

production requests.  The motion, which in effect, is a motion for protective order, seeks an order

striking request for production Nos. 1, 2, 4, 5, 9, 10, and 11 ("Exhibit A"), and deposition topics

Nos. 1, 2, 4, 5, 9, and 13.[4]

       On July 18, 2013, Plaintiffs filed their response to the motion, in which they argued that

the requested discovery was "directly relevant to elements of [P]laintiffs' claims, including

PETCO's actual/constructive notice of the condition, the foreseeability of the risk of harm, and

the exercise of reasonable care by PETCO.  (Pl. Opp. Memo. [doc. # 36]).  PETCO filed its reply

memorandum on July 26, 2013.  (Reply Memo. [doc. # 39]).  It maintained that the requested

discovery was not relevant to whether PETCO had actual or constructive notice of the hazardous

condition.  *Id*.  The matter is now ripe.

### Law

       Under Rule 26(b),

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense – including the existence, description, nature,
> custody, condition, and location of any documents. . .  Relevant information need
> not be admissible at the trial if the discovery appears reasonably calculated to lead
> to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1).

The courts understand the rule to provide for broad and liberal discovery.  *See Schlagenhauf v.

Holder*, 379 U.S. 104, 114-5 (1964); *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385 (1947).

---

    [4]  The challenged "Exhibit B" items are substantially similar to the correspondingly
numbered items in "Exhibit A," with the exception of "Exhibit B" item 13, which corresponds to
"Exhibit A" item 11.  Accordingly, the court's discussion will focus on the "Exhibit A" items,
but the analysis will apply with equal force to the corresponding "Exhibit B" items.

Nonetheless, the scope of discovery is limited by relevance, albeit "relevance" is to be broadly construed. *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). Ultimately, however, the relevance inquiry ends where it starts; i.e., the relevancy of a discovery request depends upon whether it is "reasonably calculated" to lead to admissible evidence. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004). A party objecting to discovery "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'" *Reyes v. Red Gold, Inc.* 2006 WL 2729412 (S.D. Tex. Sept. 25, 2006).

However,

[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

  (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

  (ii)   the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

  (iii)  the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C).

Moreover, upon a showing of good cause, a court may issue an order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including [an order] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . " Fed. R. Civ. P. 26(c)(G).

4

The party seeking the protective order must establish that good cause exists for the entry of the order by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193 (1981); *see also*, *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199 (1984).

## Discussion

The parties agree that Plaintiffs' cause of action is governed by Louisiana's premises liability statute for merchants, sometimes referred to as the Louisiana Merchant Liability Act, or for greater ease of reference, the "LMLA," La. R.S. § 9:2800.6. *See e.g., Toney v. U.S. Dep't of Army*, 207 F. App'x 465 (5th Cir. 2006) (unpubl.). Under the LMLA, "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." La. R. S. § 9:2800.6(A). In addition to all other elements of his cause of action, a claimant under the LMLA must prove that

      (1)    The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

      (2)    The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

      (3)    The merchant failed to exercise reasonable care. . .

La. R. S. § 9:2800.6(B).

The LMLA applies to "loss sustained because of a fall due to a condition existing *in* or on a

merchant's premises . . ." *Id*. (emphasis added).

In its motion, PETCO appears to argue that because the LMLA governs Plaintiffs' cause of action, the evidentiary inquiries must focus exclusively on the alleged presence of rainwater on the floor.  *See* Pl. Memo., pgs. 4-5 [doc. # 32].  Under Louisiana law, however, the pertinent hazardous condition can be something other than the immediate impetus for the fall.  *Cates v. Dillard Dep't Stores, Inc.*, 624 F.3d 695, 697 (5th Cir. 2010) (citations omitted).  For example, negligence may stem from failure to place a mat inside an entranceway that typically becomes slippery during a rainfall.  *Attaway v. Albertsons Inc.*, 174 F. App'x 240, 242 (5th Cir. 2006) (unpubl.) (citation omitted).  Alternatively, negligence may stem from a defect in the premises that causes water to accumulate on the floor.  *See Gray v. Wal-Mart Louisiana, L.L.C.*, 484 F. App'x 963, 965 (5th Cir. 2012) (unpubl.) (puddle of rainwater purportedly caused by hole in the roof).  When, as alleged here, a person lawfully on a merchant's premises falls as a result of a defective condition "*in* or on" the premises, the merchant's liability, if any, is analyzed under the LMLA.  *Gray, supra*; *Brown v. Wal-Mart Louisiana LLC*, Civ. A. No. 10-1402, 2012 WL 3109785 (W.D. La. July 27, 2012) (Doherty, J.).

PETCO further argues that Plaintiffs never complained of any building defects in their complaint.  However, Plaintiffs's complaint includes allegations that there was no awning over the pertinent entranceway to divert rain.  (Petition, ¶ 8).  It further alleges that the entranceway did not have a mat to absorb water, either inside or outside the door.  *Id*.  Moreover, the complaint states that "there were no wet floor warnings of any kind on the *linoleum* floor."  *Id*. (emphasis added).  Plaintiffs add that it was reasonably foreseeable that customers would track water into the building "onto the *linoleum* floor and that water on the floor created an unreasonable risk of harm . . ."  *See* Petition, ¶ 11 (emphasis added).  Finally, in addition to

6

specific acts of negligence, Plaintiffs seek to hold PETCO liable for permitting an unreasonably dangerous condition to exist on its premises, and for "[o]ther acts of negligence to be shown more fully at the trial . . ." *Id.*, ¶ 12.

While Plaintiffs may not have specifically alleged that the accident stemmed from the type of floor surface utilized by PETCO, they did stress that the floor was covered in linoleum, which implies that the surface was prone to becoming slippery when wet.  These allegations provide PETCO with fair notice that the floor surface was a potential issue in this slip and fall case.  Fed.R.Civ.P. 8(a).  Moreover, Plaintiffs sought the instant discovery relating to the varying floor surfaces soon after they inspected the store and learned that PETCO installed different textured floor surfaces in areas of the store that appear more likely to suffer water spills.  *See* Proposed Stipulation [doc. # 36-1].

PETCO also argues that the requested discovery is not relevant to the issue of whether it knew or should have known of the condition(s) that caused Plaintiffs' fall.  Plaintiffs disagree. However, for purposes of the instant motion, the court need not weigh in on this issue.  At minimum, the requested discovery is relevant to other elements of Plaintiffs' cause of action such as whether there was a condition(s) on the premises that created an unreasonable risk of harm that was reasonably foreseeable, and whether PETCO failed to exercise reasonable care under the circumstances.

Finally, PETCO contends that the requested discovery items and topics are overbroad and unduly burdensome.  The court will address this argument in the context of each requested item or topic:

1.      Any studies, reports, e-mails, videos, photographs and other documents
         addressing the feasibility, availability, selection, cost and use of mats (or other
         coverings) on floor surfaces at the PETCO Store in Shreveport, Louisiana (as well
         as mats (or other floor coverings) used in other PETCO Stores in Louisiana to the

extent that mats/floor coverings in other PETCO Stores are different from those
used in the Shreveport PETCO store);

PETCO argues that it would be cost prohibitive to locate and review these documents for

a store that was constructed some fifteen years ago.  The court agrees that because mats

intuitively appear to be a comparatively quick and low cost method for redressing wet floor

areas, evidence of feasibility and availability may change over time.  What may have guided the

process 15 years is not necessarily relevant today.  Accordingly, the court will limit the reach of

this discovery request to no earlier than three (3) years before the date of the accident.

Furthermore, according to PETCO's website,[5] it has approximately eleven stores in Louisiana.  It

should not be overly burdensome for PETCO to contact those other stores to discern whether

they employ mats at their entranceways.

2.     Any studies, reports, e-mails, videos, photographs and other documents
       addressing the feasibility, availability, selection, cost and use of floor surfaces (for
       example, linoleum tiles, the abrasive floor surface in aquarium area, and sandy
       floor surface in rest rooms) at the PETCO Store in Shreveport, Louisiana (as well
       as other floor surfaces in other PETCO Stores in Louisiana to the extent that floor
       surfaces coverings in other PETCO Stores are different from those used in the
       Shreveport PETCO store);

Again, PETCO contends that it would be unduly burdensome for it to locate and review

these documents for a store that was constructed 15 years ago.  However, the requested discovery

is relevant to determine why abrasive and/or sandy surfaces were used in areas seemingly prone

to water spillage, but not in other areas such as where the instant accident occurred.  If the

abrasive and sandy surfaces were applied at the time the store was built, then it may be necessary

to search for documents from that time period to explain the basis for that decision.  If the

---

[5]

http://www.petco.com/petco_Page_PC_storelocator.aspx?cm_ven=circular&cm_ite=locator (last
visited on Aug. 30, 2013)

abrasive and sandy surfaces were applied subsequent to construction, then the responses need not

go further back than the decision-making process associated with the installation of those

surfaces.  It is also relevant to the instant case whether other PETCO stores in Louisiana apply

different surface coverings to their entranceways than the bare linoleum employed by the

Shreveport store.[6]  Subject to the foregoing, PETCO's objection is overruled.

4.      Studies, reports, e-mails, videos, photographs, and other documents reflecting the
        feasibility, availability, selection, cost and use of awnings for the exterior door
        leading to the grooming salon;

        PETCO objects to this request on the basis of relevancy.  For reasons explained earlier in

this opinion, the court disagrees.  To the extent that PETCO contends that the request is unduly

burdensome, the court does not discern an effective alternative limitation – aside from a version

of the proposed stipulation.  The objection is overruled.

5.      Studies, reports, e-mails, videos, photographs and other documents reflecting the
        feasibility, availability, selection, cost and use (or recommend [*sic*] use) of
        warnings to employees and/or patrons in the PETCO Store in Shreveport,
        Louisiana (as well as other warnings to the extent that such warnings are used in
        other PETCO Stores are different from those used in the Shreveport PETCO
        store);

        PETCO argues that it would be cost prohibitive to locate and review these documents for

a store that was constructed fifteen years ago.  The court agrees that such policies change over

time.  What might have been reasonable 15 years is not necessarily relevant today.  Accordingly,

the court will limit the reach of this discovery request to no earlier than three (3) years before the

date of the accident. The court also finds that it is not unduly burdensome for PETCO to contact

the other ten or so other stores in Louisiana to discern whether they employ different warnings

---

[6]  Alternatively, Plaintiffs have proposed a relatively benign stipulation that would relieve
PETCO of the cost and expense of responding to this discovery.

than what the Shreveport store uses.

9.     Materials and other documents reflecting any worker's compensation claims in
       the PETCO store in Shreveport, Louisiana in the last 10 years;

       PETCO contends that this evidence is not relevant.  For reasons explained earlier in this

opinion, the court disagrees.  At minimum, the evidence is relevant to whether the risk of harm

was reasonably foreseeable.  However, the court will limit the request to worker's compensation

claims stemming from slip and fall incidents.

10.    PETCO'S [*sic*] catalog reflecting products and other items available to PETCO
       stores, including those parts of the PETCO catalog reflecting warnings, mats,
       floors, coverings and other items that might be used to protect patrons and/or
       minimize risks to patrons;

       PETCO argues that this requested discovery is unnecessarily cumulative and duplicative

because it already has provided screen captures of relevant portions of PETCO's supply catalog

responsive to the request.  In the absence of any argument to the contrary, the court agrees.

11.    Emails, notices, and other documents reflecting the budget available to the
       PETCO store in Shreveport, Louisiana (and other PETCO stores in Louisiana, if
       different from the Shreveport store) for safety items (including mats, floor
       coverings, warnings, and other safety items), reflecting the method of determining
       the budget, and reflecting the communication of that budget to personnel in the
       Shreveport store.

       PETCO contends that this information is proprietary, with no evidentiary value to

Plaintiffs.  However, the evidence remains relevant to the issue of whether PETCO had available

alternative remedies that could have alleviated the risk of harm.  If PETCO is willing to agree

that its Shreveport store had sufficient, available funding to cover the costs of potential remedial

measures such as mats, floor coverings, warnings, and the like, then the request is superfluous.

On the other hand, if PETCO contends that some of these alternative measures were cost

prohibitive, then budget and funding becomes an issue.  Insofar as PETCO seeks to preserve the

10

privacy of its store budget(s), then, prior to production, it may require Plaintiffs to sign a

mutually agreeable confidentiality agreement.  Otherwise, the objection is overruled.

**Conclusion**

For the above-assigned reasons,

IT IS ORDERED that the motion to limit Rule 30(b)(6) notice of deposition and

accompanying request for production of documents [doc. # 32] filed by Defendant PETCO is

GRANTED IN PART only to the extent specified in the body of this decision.

IT IS FURTHER ORDERED that the motion [doc. # 32] otherwise is DENIED.  PETCO

shall supplement its responses to the requests for production at, or before the agreed-upon date

for the re-scheduled 30(b)(6) deposition.

THUS DONE AND SIGNED at Monroe, Louisiana, this 30th day of August 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE